

```
            FILED
     U.S. DISTRICT COURT
   EASTERN DISTRICT OF LA.

     2019 MAY -9  P 2: 51

       WILLIAM W. BLEVINS
                 CLERK
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

### SUPERSEDING BILL OF INFORMATION FOR FORCED LABOR CONSPIRACY, INTERFERENCE WITH FAIR HOUSING RIGHTS, HATE CRIMES, MISPRISION OF A FELONY, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 18-160** |
| v. | * | **SECTION: "J"** |
| **TERRY J. KNOPE, II** | * | **VIOLATION: 18 U.S.C. § 371** |
| | | 42 U.S.C. § 3631 |
| | * | 18 U.S.C. § 249 |
| | | 18 U.S.C. § 4 |

\*   \*   \*

The United States Attorney charges:

### COUNT ONE
### (Conspiracy, Forced Labor)

A.   **AT ALL TIMES MATERIAL HEREIN:**

1.   Defendant **TERRY J. KNOPE, II (KNOPE)** was the husband of R.K.; the step-father of B.L. and J.L., and the father of T.K.

2.   D.P. was a relative of R.K.'s. D.P. has been diagnosed with disabilities, including autism, and was handicapped as that term is defined in Title 42, United States Code, Section 3602(h). D.P. received federal Supplemental Security Income ("SSI") from the federal

```
___ Fee_USA_____
___ Process_____
 X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____
```

Social Security Administration ("SSA") because of her disabilities. In August 2015, **KNOPE**, R.K., J.L., B.L., and T.K. lived in a house in Kentwood, Louisiana. D.P. and D.P.'s mother lived with them.

3.  On August 12, 2015, D.P.'s mother died. A short time later, **KNOPE**, R.K., J.L., and T.K. moved to a mobile home located on Rushing Lane in Amite, Louisiana ("the Rushing Lane property"), taking D.P. with them. B.L. periodically lived at the Rushing Lane property.

4.  On or about August 13, 2015, **KNOPE** applied to be representative payee for D.P.'s SSI benefits. As D.P.'s representative payee, **KNOPE** was required by the SSI program to spend all of the benefits he received on D.P.'s behalf only for D.P.'s living expenses.

**B.    THE CONSPIRACY:**

Beginning on or about August 13, 2015, and continuing through on or about June 30, 2016, within the Eastern District of Louisiana and elsewhere, the defendant, **TERRY J. KNOPE, II**, conspired, combined, and agreed with others known and unknown to the United States Attorney, including R.K., J.L., B.L., and T.K., to knowingly violate 18 U.S.C. § 1589. Specifically, the defendants conspired, combined, and agreed to knowingly provide and obtain the labor and services of D.P. by means of force, threats of force, physical restraint, and threats of physical restraint to D.P.; by means of serious harm and threats of serious harm to D.P.; by means of the abuse and threatened abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause D.P. to believe that if D.P. did not perform such labor and services, D.P. would suffer serious harm and physical restraint.

**C.    MANNER AND MEANS OF THE CONSPIRACY:**

It was a part of the plan and purpose of this conspiracy that defendant **KNOPE**, R.K., J.L., B.L., and T.K. (collectively, "the family") forced D.P. to perform household work and yard work

2

for the family at the Rushing Lane property. The plan of the conspiracy was for the co-conspirators to subject D.P. to physical restraint, consistent physical violence, threats of physical violence, psychological and verbal abuse, abuse of legal process, and psychological manipulation to obtain uncompensated household labor and services from D.P. As the conspiracy progressed, the family physically restrained D.P. by locking her in a backyard tent, a backyard shed, and later in a backyard cage to maintain control over her and to prevent her from escaping.

### D.  OVERT ACTS:

In furtherance of this conspiracy and to effect the objects thereof, defendant **KNOPE** and his co-conspirators committed the following overt acts, among others, in the Eastern District of Louisiana:

1. At the Rushing Lane Property, although D.P. was initially permitted to sleep on a mattress on the floor inside the family's mobile home, R.K. soon thereafter ordered D.P. to sleep outside in the backyard.

2. In the backyard, the family required D.P. to live first in a camping tent, then in a shed, and, finally, in a cage.

3. While D.P. lived in the tent, to prevent D.P. from escaping from the Rushing Lane property, R.K. ordered T.K., J.L., and others to lock D.P. into the tent at night. While D.P. lived in the shed and in the cage, to prevent D.P. from escaping from the Rushing Lane property, **KNOPE** and R.K. ordered T.K., J.L., and others to lock D.P. into those structures.

4. Throughout the time D.P. lived at the Rushing Lane property, the family required D.P. to complete housework and yard work in exchange for food and water. The family did not pay D.P. for any of her work. Each day, the family required D.P. to clean up the yard.

5. At times, the family also required D.P. to clean the bathroom in the mobile home,

clean the mobile home's kitchen, and wash the family's dishes, among other tasks.

6.     Throughout the time D.P. lived at the Rushing Lane property, the family forced D.P. to eat lesser quality food than the rest of the family.

7.     When D.P. did not complete her work to **KNOPE's** or R.K.'s liking, or when D.P. did not complete the work quickly enough, **KNOPE** and R.K. denied D.P. food.

8.     Throughout the time D.P. lived at the Rushing Lane property, when D.P. did not complete her housework or yardwork to **KNOPE's** or R.K.'s liking, members of the family physically assaulted D.P. **KNOPE** choked and kicked D.P. and R.K. threw canned goods at D.P. for this reason.

9.     On several occasions, the family forced D.P. to do housework in a demeaning fashion. **KNOPE** and R.K. forced D.P. to clean the kitchen and walls with a toothbrush.

10.    **KNOPE** and R.K. required D.P. to cut the grass in the yard using scissors.

11.    In the spring of 2016, at **KNOPE's** and R.K.'s direction, **KNOPE** and J.L., with the help of others (including one of **KNOPE's** minor step-children), built a cage for D.P. in the backyard of the Rushing Lane property. The cage consisted of a disused animal pen made out of chicken wire. A plastic tarp was placed over the top of the cage. J.L. cut tree branches and placed them over the tarp to hide the cage from sight. The family put a tent and a single bare mattress inside the cage. The family also put a five-gallon bucket in the cage for D.P. to use as a toilet.

12.    Once the cage was complete, **KNOPE** and R.K. required D.P. to live in the cage.

13.    Members of the family routinely physically assaulted D.P., causing D.P. physical injuries. On one occasion, after R.K. stated to B.L. that D.P. should be punished, B.L. struck D.P. over the head with a wooden board, causing D.P. to bleed from her head such that blood dripped onto D.P.'s shirt and onto the floor.

4

14. After the assault described in paragraph 13, the family refused to provide D.P. with professional medical care because the family did not want anyone to know that they were abusing D.P. Instead, one of the family members used glue to close D.P.'s wound.

15. On another occasion, **KNOPE** burned D.P. with a cigarette lighter by placing the flame directly on D.P.'s hand, while B.L. held D.P.'s arm in place. While being burned, D.P. cried, stated that the flame was causing her pain, and attempted to pull her arm away from the flame, but B.L. held D.P.'s arm in place preventing D.P. from escaping the flame. As he burned D.P., **KNOPE** told D.P. that she was being punished for talking back to R.K.

16. On another occasion, **KNOPE** shot D.P. with a BB gun at close range because of D.P.'s disability, while telling D.P. she was a "retard" who "deserved to die."

17. On at least one occasion, **KNOPE** and R.K. hit D.P. with a wooden paddle.

18. On at least one occasion, **KNOPE** punched D.P. in the head with his fist.

19. On at least one occasion, at R.K.'s direction, R.K.'s minor children kicked and punched D.P. while telling D.P. that she was dumber than they were.

20. T.K., at R.K.'s direction, held D.P's head underwater in a bathtub as D.P. struggled to come up for air.

21. On another occasion, **KNOPE** held D.P. underwater in the hot tub in the backyard of the Rushing Lane property as D.P. struggled to come up for air.

22. On at least one occasion, **KNOPE** smashed D.P.'s hand with a hammer.

23. **KNOPE**, R.K., J.L., and B.L. routinely threatened D.P. These threats included, among other things, threats to shoot D.P. if she ever tried to escape the Rushing Lane property, threats to beat D.P. if she disobeyed the family's orders, and threats to kill D.P. if she ever reported the family to law enforcement.

24.     J.L. threatened to cut D.P.'s throat if she ever spoke to law enforcement about her abuse by the family.

25.     R.K. threatened to shoot D.P. if she ever tried to escape from the Rushing Lane property.

26.     Each member of the family, including **KNOPE**, routinely verbally and psychologically abused D.P. The family routinely called D.P. "stupid" and "retarded" in reference to D.P.'s disability. R.K. said, in reference to D.P., "This retarded girl will do anything you say."

27.     On one occasion, R.K. forced D.P. to open an urn containing D.P.'s deceased mother's ashes, pour the ashes into a bowl with milk, and eat the ashes with a spoon. The family, including **KNOPE**, watched and laughed at D.P. as she did so. D.P. vomited onto the table several minutes after consuming the ashes.

28.     On another occasion, **KNOPE** and J.L. filled a bucket with urine and feces from the family's septic tank and threw the human waste at D.P. D.P., who was covered from head to toe with the urine and feces, began screaming while J.L. laughed. J.L. then sprayed D.P. with water from an outdoor hose to clean her off. The family did not allow D.P. to shower or use soap to clean off the human waste.

29.     The family forced D.P. to lick soiled underwear.

30.     The family forced D.P. to eat dog feces placed on bread.

31.     J.L. and R.K. forced D.P. to simulate sexual acts with a jalapeño pepper.

32.     More than once, J.L. and R.K. forced D.P. to make sexual advances toward male visitors to the Rushing Lane property.

33.     Throughout the time D.P. lived at the Rushing Lane property, **KNOPE** and R.K. manipulated the legal process to advance the conspiracy. On or about August 13, 2015, **KNOPE**

completed paperwork that gave him authority to receive D.P.'s federal SSI benefits in order to administer them on D.P.'s behalf. However, after completing the paperwork, **KNOPE** kept the money and refused to give D.P. use of or access to any of these benefits (which were D.P.'s only source of income), to prevent D.P. from being able to leave the Rushing Lane property.

34.     **KNOPE** and R.K. also manipulated the legal process to advance the conspiracy by forcing D.P. to use methamphetamine and prescription painkillers, then threatening to turn D.P. into the police for using drugs if D.P. did not obey the family's orders.

35.     R.K. prevented D.P. from keeping possession of any state identification, money, or means of communication, so as to prevent D.P. from escaping the family's control or contacting law enforcement.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Interference with Federal Housing Rights)

1.      The allegations in Count One of this Superseding Bill of Information are re-alleged and incorporated by reference as though fully set forth herein.

2.      Between on or about August 12, 2015, and on or about June 30, 2016, in the Eastern District of Louisiana and elsewhere, the defendant, **TERRY J. KNOPE, II**, did by force and threat of force, willfully injure, intimidate, and interfere with, and attempt to injure, intimidate, and interfere with, D.P., a handicapped person as that term is defined in Title 42, United States Code, Section 3602, because of D.P.'s handicap and:

  (a)   because D.P. was and had been renting and occupying a dwelling; specifically, the Rushing Lane property; and

  (b)   in order to intimidate D.P. from participating in the rental and occupation of a dwelling without discrimination on account of handicap; specifically, the

7

defendant forced D.P. to live in a locked backyard cage to prevent D.P. from leaving the property and renting a home and occupying a dwelling elsewhere, where she would not be abused because of her disability;

all of which acts resulted in bodily injury to D.P. and included the use, attempted use, and threatened use of dangerous weapons and fire.

All in violation of Title 42, United States Code, Sections 3631(a) and (b).

## COUNT THREE
### (Hate Crimes)

1.  The allegations in Counts One and Two of this Superseding Bill of Information are re-alleged and incorporated by reference as though fully set forth herein.

2.  Between on or about August 15, 2015, and on or about June 30, 2016, within the Eastern District of Louisiana, the defendant **TERRY J. KNOPE, II**, because of D.P.'s actual and perceived disability, did willfully cause bodily injury to D.P., and did attempt to cause bodily injury to D.P. using a dangerous weapon (specifically, a BB gun) that traveled in interstate commerce, and otherwise affected interstate commerce.

All in violation of Title 18, United States Code, Section 249(a)(2).

## COUNT FOUR
### (Misprision of a Felony)

1.  The allegations in Count One through Three of this Superseding Bill of Information are re- alleged and incorporated by reference as though fully set forth herein.

2.  Beginning on or about August 13, 2015, and continuing through on or about June 30, 2016, within the Eastern District of Louisiana, the defendant **TERRY J. KNOPE, II**, having knowledge of the actual commission of a felony cognizable by a court of the United States, did conceal the same from law enforcement and did not as soon as possible make the illegal activity

8

known to a judge, agent, or other person in civil or military authority under the United States. Specifically, the defendant knew that T.K. and J.L. were manufacturing methamphetamine at the Rushing Lane property, which is a federal crime. The defendant took affirmative steps to conceal this crime and did not report the illegal activity to any law enforcement official.

All in violation of Title 18, United States Code, Section 4.

## NOTICE OF FORFEITURE

1. The allegations of Count 1 of this Superseding Bill of Information are realleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 1594(d).

2. As a result of the offense alleged in Count 1 the defendant, **TERRY J. KNOPE, II**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 1594(d), any and all property, real or personal, constituting or derived from any proceeds the defendant obtained directly or indirectly as a result of the said violations and any and all property, real or personal, used or intended to be used in any manner or part to commit or to facilitate the commission of the violation alleged in Count 1 of this Superseding Bill of Information.

3. If any of the property subject to forfeiture pursuant to Paragraph 2 of this Notice of Forfeiture, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third person;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be

subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All in violation of Title 18, United States Code, Section 1594(d).

PETER G. STRASSER
UNITED STATES ATTORNEY

*/s/ Julia K. Evans*
JULIA K. EVANS
Assistant United States Attorney
Eastern District of Louisiana

*/s/ Risa Berkower by jke*
RISA BERKOWER
NICHOLAS REDDICK
Trial Attorneys
Civil Rights Division
United States Department of Justice

New Orleans, Louisiana
May 9, 2019

No. 18-160

# United States District Court
## FOR THE
### EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

vs.

TERRY J. KNOPE, II

---

SUPERSEDING BILL OF INFORMATION FOR FORCED LABOR CONSPIRACY, INTERFERENCE WITH FAIR HOUSING RIGHTS, HATE CRIMES, MISPRISION OF A FELONY, AND NOTICE OF FORFEITURE

Violation(s): 18 U.S.C. § 371
42 U.S.C. § 3631
18 U.S.C. § 249
18 U.S.C. § 4

---

Filed _____, 20 19

_____, Clerk.

By _____, Deputy

*Julia K. Evans* (signature)

Assistant United States Attorney
JULIA K. EVANS